N THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **OMEGA ENTERPRISES, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:25-CV-1117-L** |
| | § | |
| **FEDERAL INSURANCE COMPANY; HOLMES, MURPHY AND ASSOCIATES; and DONALD GREGORY STITTS,** | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

On March 3, 2026, the Amended Findings, Conclusions and Recommendation of the United States Magistrate Judge ("Report") (Doc. 14) was entered, recommending that the court deny the Motion to Remand (Doc. 5) filed by Plaintiff Omega Enterprises, Inc. ("Plaintiff" or "Omega") but allow Plaintiff to amend its pleadings. In support of this recommendation, the magistrate judge determined that Defendant Donald Gregory Stitts ("Mr. Stitts" or "Defendant Stitts") was not properly joined. For the reasons that follow, the court **rejects** the findings and conclusions of the magistrate judge (doc. 14); **grants** Plaintiff's Motion to Remand (Doc. 14), and **remands** this action to County Court at Law No. 5, Dallas County, Texas, from which it was removed.

## I. Background

Plaintiff originally filed this action in state court, alleging claims for breach of contract alleged violations of Section 542.051, *et seq.*, of the Texas Insurance Code ("TIC") against Defendant Federal Insurance Company ("FIC" or "Federal"); claims for common-law negligence, negligent procurement, and negligent misrepresentation or failure to disclose against Mr. Stitts and

Defendant Holmes, Murphy, and Associates ("Holmes Murphy"); and claims for alleged violations of Section 17.46(b) of the Texas Deceptive Trade Practices Act and Sections 541.051, 541.060, and 641.061, *et seq*., of the TIC against all Defendants. All claims by Plaintiff in this action pertain to the conduct of FIC, Holmes Murphy, and Mr. Stitts in connection with a renewed property insurance policy ("Policy") that FIC issued to Omega.

Omega alleges that it has been a client of Holmes Murphy for approximately 15 years and has a long-standing relationship with Chubb and its affiliates, including FIC, for approximately 15 years. Omega further alleges that Mr. Stitts has been its main point of contact and insurance agent at Holmes Murphy for its property insurance needs for more than 12 years, and he has procured property insurance coverage for it during that entire time. Omega alleges that during the policy period for the Policy issued by FIC, it incurred damages to 71 houses and one neighborhood fence that it owns in Bell County ("Property"). Omega alleges that it timely filed a claim for losses to the Property that it thought were covered under the Policy based on the coverage it had under prior policies, but FIC denied the claim on the grounds that the losses were not covered in light of an exclusion—that applies to certain perils in certain counties for "works while in transit." Doc. 1-3 at 3." Omega asserts that this exclusion and changed definition for "works while in transit" was not included in its prior policies, and it was not notified of this change, which encompasses "all construction works" when it renewed its insurance coverage, although the exclusion as now defined "goes to the heart and totality of Omega's business." *Id.* at 5. Omega alleges that, because of FIC's denial of its insurance claim and/or Holmes Murphy's and Mr. Stitt's "negligence in procuring the Policy with the alleged exclusion for certain counties Omega frequently transacts business, it paid out-of-pocket to repair the 71 houses and fence in Bell County. *Id.* at 6.

FIC removed this action to federal court on May 5, 2025, alleging the existence of subject matter jurisdiction based on diversity. In its Notice of Removal, FIC alleges that there is complete diversity of citizenship between all properly joined parties, excluding Mr. Stitts, who it contends was improperly joined to the lawsuit by Plaintiff to defeat diversity jurisdiction. Not considering the citizenship of Mr. Stitts, the allegations in FIC's Notice of Removal are sufficient to establish that there is complete diversity of citizenship between all of the other parties, and the amount in controversy exceeds $75,000 as required for subject matter jurisdiction based on diversity.

On June 4, 2025, Plaintiff filed its Motion to Remand (Doc. 5), contending that, contrary to FIC's allegation, Mr. Stitts was properly joined as a party to this action. Regarding Mr. Stitts, FIC alleges in its Notice of Removal that he "is an individual and citizen of the State of Texas who has been improperly joined to defeat the Court's diversity jurisdiction," and his "citizenship should be disregarded for jurisdictional purposes." Doc. 1 ¶ 8. As FIC correctly notes, the doctrine of improper joinder allows a defendant to remove a case to federal court if a nondiverse defendant was joined to defeat federal jurisdiction. Doc. 1 ¶ 10 (citing *See Smallwood v. Illinois Cent. R.R. Co*., 385 F.3d 568, 573 (5th Cir. 2004); *International Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir. 2016)). The issue of whether Mr. Stitts is a proper party to this action is jurisdictional in nature and is the subject of Plaintiff's Motion to Remand (Doc. 5). Thus, the only remaining issue is whether Mr. Stitts was properly joined and whether his joinder defeats the existence of subject matter jurisdiction based on diversity.

As indicated, the magistrate judge analyzed the claims asserted by Plaintiff against Mr. Stitts and the factual allegations in Plaintiff's Original Petition and determined that Mr. Stitts was not properly joined because Plaintiff's pleadings do not contain "sufficient facts to state a claim against non-diverse Defendant Stitts." Doc. 14 at 21. Plaintiff filed objections to the Report on

March 17, 2026. Doc. 15. Defendant filed a response in opposition to Plaintiff's objections on March 31, 2026. Doc. 18.

## II. Discussion (Plaintiff's Negligent Procurement Claim)

The court focuses on Plaintiff's negligent procurement claim against Mr. Stitts, as it is dispositive of Plaintiff's Motion to Remand and the parties' related arguments in response to the magistrate judge's Report. The court does not set forth the applicable federal pleading standard or the law applicable to improper joinder analyses, as the Report does so at length, and the parties do not contend that the magistrate judge applied the wrong federal pleading standard or legal standard for improper joinder. The Report also correctly notes that FIC as the removing party and party asserting improper joinder, has the heavy burden of establishing that Mr. Stitts' joinder was improper.

The Report, however, does not set forth the law applicable to Plaintiff's negligent procurement claim (or negligence claims). Texas law recognizes negligent procurement of an insurance policy as a legally cognizable claim against an insurance agent like Mr. Stitts. *See May v. United Servs. Ass'n. of Am.*, 844 S.W.2d 666 (Tex. 1992). In *May*, the Texas Supreme Court held that an insurance agent "who undertakes to procure insurance for another owes a duty to a client to use reasonable diligence in attempting to place the requested insurance and to inform the client promptly if unable to do so." *Id.* at 669.

In addressing Plaintiff's negligent procurement and other claims, the magistrate judge determined as follows:

> **C. Omega's claims against [Mr.] Stitts fail to properly allege facts that can survive a Rule 9(b) or 12(b)(6) analysis.**
>
> Omega's pleading repetitively claim[s] that "[Mr.] Stitts specifically as Omega's main point of contact and agent: (1) engaged in wrongful conduct/negligent procurement[,]" including making misrepresentations that

"coverages were obtained (without the [complained-of] fundamental exclusion for certain added counties for certain perils for [']works while in transit['];" (2) knew about the "works while in transit" exclusion and failed to disclose it to Omega before the [P]olicy was procured and bound; and (3) "failed to provide the actual insurance Policy to Omega before it was bound and before the loss(es)." (Pet. at 3-8.) But these allegations fall far short of alleging the "who, what, when, and where and how" required by Rule 9(b). *See, e.g., Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727, 733 (5th Cir. 2019)[.]

Even under the more liberal pleading standard of Rule 8(a), Omega has failed to allege any substantive facts regarding [Mr.] Stitts'[] involvement in procuring and providing the [P]olicy, including any alleged violation of the TIC and DTPA. The [P]etition is vague, devoid of factual substance, and impermissibly conclusory, and also mimics statutory text in many instances—allegations that are insufficient to state a claim. *See, e.g., Fernandez v. Allstate Fire & Cas. Ins. Co.*, No. 3:15-CV-2689-D, 2015 WL 6736675, at *3 (N.D. Tex. Nov. 4, 2015) (noting that "conclusory allegations that merely track the terms of the statutory provisions" are insufficient to withstand a Rule 12(b)(6)-type analysis); *Studer v. State Farm Lloyds*, No. 4:13[-]CV[-]413, 2014 WL 234352, at *4 (E.D. Tex. Jan. 21, 2014) (holding that the plaintiff's claims against the insurance adjuster "fail[ed] to allege sufficient facts that would make any claim against [him] in his individual capacity plausible" and that "[t]he Court must ignore all conclusory statements."); *DeCluette v. State Farm Lloyds*, No. 3:12-CV-4449-B, 2013 WL 607320, at *3 (N.D. Tex. Feb. 19, 2013) (denying a motion to remand and noting that the claims against the insurance company and adjuster failed to specify the conduct of each party and that the allegations were improperly conclusory and recited elements of causes of action).

And "[a]lthough Rule 9(b) by its terms does not apply to negligent misrepresentation claims, [the Fifth Circuit] has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims." *Benchmark Elecs*.[*, Inc. v. J.M. Huber Corp*., 343 F.3d 719, 723 (5th Cir. 2003)] (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). Such is the case here, as Omega's negligent misrepresentation claims are based on the same set of alleged facts. (*See generally* Pet.)[.] Thus, for the same reasons that the Original Petition fails to state a TIC/DTPA claim under Rule 9(b), it fails to state a claim for negligent misrepresentation. *See Jones v. Higginbotham Ins. Agency, Inc.*, No. 1:22-CV-890-JRN, 2023 WL 5211041, at *7 (W.D. Tex. July 27, 2023), *adopted,* 2023 WL 5216810 (W.D. Tex. Aug. 14, 2023).

Regarding Omega's allegation that [Mr.] Stitts failed to disclose the "works while in transit" exclusion to the Federal [P]olicy (*see* Pet. at 7-8), under Texas law, an insured has a duty to read the policy and is charged with knowledge of the policy's terms and conditions, and an insurance agent has no duty to explain the policy terms. *WMS, LLC v. Allied Prop. & Cas. Ins. Co*., 244 F. Supp. 3d 567, 573 (W.D. Tex. 2017) (collecting cases). Accordingly, "alleged[ly] fraudulent

> representations cannot as a matter of law override the written contract terms[.]" *Luna v. Feliciano*, No. 6:18-CV-00340-ADA-JCM, 2019 WL 10349406, at *4, (W.D. Tex. Jan. 29, 2019).
>
> Based on the foregoing, Omega's Original Petition has not pled sufficient facts to state a claim against non-diverse Defendant Stitts. *See Cavallini* [*v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995)] (stating that removal jurisdiction is determined on the basis of claims asserted in the state-court petition existing at the time of removal).

Doc. 14 at 18-21.

**A. Applicability of Rule 9(b) to Plaintiff's Negligent Procurement Claim**

The parties first dispute whether the magistrate judge determined that Rule 9(b)'s heightened pleading standard applies to all of Plaintiff's claims, including those for negligence and negligent procurement. The parties' confusion apparently stems from the magistrate judge's decision to analyze all of Plaintiff's claims together rather than individually. *See id.*; *see also* Doc. 14 at 15 ("**B. Omega's causes of action against [Mr.] Stitts are properly analyzed under Rule 12(b)(6) and Rule 9(b)'s heightened pleading standards.**"). Based on the following language in the Report, it appears that the magistrate judge determined that only Plaintiff's claims for negligent misrepresentations and alleged violations of the DTPA and TIC are governed by Rule 9(b):

> Contrary to Omega's contention that Rule 9(b)'s heightened pleading standards do not apply because it has not pled a cause of action for fraud (*see* Mot. at 19-22), Omega does not have to plead a cause of action labelled "fraud" for this standard to apply. "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001); *see also Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998) ("Claims alleging violations of the Texas Insurance Code and the DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b)"); *Ears & Hearing, P.A. v. Blue Cross & Blue Shield of Tex[.]*, No. 1:18-CV-00726-LY, 2019 WL 3557349, at *2 (W.D. Tex. Aug. 5, 2019), *adopted*, 2019 WL 6037271 (W.D. Tex. Sept. 17, 2019) ("Texas district courts have consistently applied Rule 9(b)'s heightened pleading standard to claims under the . . . Deceptive Trade Practices Act."). Thus, courts in this district have consistently applied Rule 9(b)'s heightened pleading standard to

> fraud-based TIC and DTPA claims. *See Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) (applying Rule 9(b) to TIC and DTPA claims).

Doc. 14 at 17-18.

To the extent that the magistrate judge determined, as FIC argues, that Rule 9(b) also applies to Plaintiff's negligent procurement claim, the court concludes that the magistrate judge **erred**. The court was unable to find any case that has applied Rule 9(b) to negligence or negligent procurement claims, and Plaintiff's negligent procurement claim, as pleaded, is not premised on its contention that Mr. Stitts' fraudulently procured the Policy at issue by intentionally failing to disclose the "works while in transit" exclusion. Moreover, while the magistrate judge correctly notes that the Fifth Circuit has applied Rule 9(b) to negligent misrepresentation claims "when the parties have not urged a separate focus on the negligent misrepresentation claims," Doc. 14 at 20 (quoting *Benchmark Elecs.*, *Inc.*, 343 F.3d at 723), the court disagrees that Plaintiff's pleadings do not urge a separate focus on its negligent misrepresentation claim or that Plaintiff's negligence claims are premised on fraudulent conduct by Holmes Murphy or Mr. Stitts. That Plaintiff alleges in support of its TIC and DTPA claims that Holmes Murphy or Mr. Stitts procured the Policy at issue by intentionally mispresenting the Policy coverage or intentionally failing to disclose the "works while in transit" exclusion does preclude it from pleading negligence claims in the alternative that are not fraud-based. *See id.*

### B. Adequacy of Plaintiff's Factual Allegations Regarding Negligent Procurement

Plaintiff also contends that the magistrate judge's Report fails to adequately consider its negligent procurement claim against Mr. Stitts. FIC disagrees and points to page 16 of the Report. FIC agrees with the magistrate judge's characterization and assessment regarding the insufficiency of Plaintiff's factual allegations that "[Mr.] Stitts is the point of contact for Omega at Holmes, [he] sold the subject [P]olicy to Omega, and [he] failed to inform Omega about the 'works in transit'

exclusion." Doc. 18 at 3 (citing Doc. 14 at 16). In addition, FIC contends that Plaintiff's "bare allegations" are distinguishable from those in the cases it relies on because: "Omega does not discuss what coverage was requested, Stitts'[] acknowledgment of that request, Stitts'[] specific misrepresentation about the coverage, or how they came to rely on that misrepresentation." Doc. 18 at 2-3 & nn. 3-4 (citing and discussing *Malone v. Blue Cross & Blue Shield of Tex., Inc.*, No. 3:18-CV-2757-K, 2019 WL 4192286, at *2 (N.D. Tex. Sept. 3, 2019); and *Sachi Trading, LLC v. Certain Underwriters at Lloyd's, London—Brit Syndicate 2987*, No. 4:18-CV-1886, 2018 WL 6271843, at *3 (S.D. Tex. Oct. 26, 2018), *report and recommendation adopted*, No. 4:18-CV-1886, 2018 WL 6267281 (S.D. Tex. Nov. 29, 2018)).

In evaluating Plaintiff's claims against Mr. Stitts, the magistrate judge first notes the following averment contained in FIC's Notice of Removal:

> Plaintiff only makes two factual allegations against Stitt[s], 1) that he sold [to Plaintiff] the [P]olicy that is the subject of this suit . . . , and 2) Stitt[s] did not inform Plaintiff of the "works while in transit" exclusion in the [P]olicy[] . . . [T]he only substantive allegation against Stitt[s] is that he failed to disclose the ["]works while in transit["] exclusion to the Federal [P]olicy.

Doc. 14 at 16 (quoting Doc. 1 at 3, 5).

The magistrate judge also notes Plaintiff's contention that these averments are "patently false" and acknowledges that Plaintiff pointed to 29 instances in its pleadings where Mr. Stitts is mentioned, but the magistrate judge ultimately agreed with FIC and determined that:

> Despite the quantity of allegations, however, the substance remains the same; [Mr.] Stitts is the point of contact for Omega at Holmes, [Mr.] Sitts sold the subject [P]olicy to Omega, and [Mr.] Stitts failed to inform Omega about the "works while in transit" exclusion. Thus, Omega's claims against [Mr.] Stitts (and Holmes) boil down to allegations that Holmes [Murphy], through its agent [Mr.] Stitts, failed to inform Omega of an exclusion that became relevant post-loss.

Doc. 14 at 16.

In addition, the magistrate concluded that all claims by Plaintiff against Mr. Stitts must be supported by allegations regarding "specific actionable conduct by the adjuster" that is distinguishable from claims against an insurer:

> "[A] plaintiff seeking to assert a complaint in federal court against an individual insurance agent or adjuster must 'satisfy Rules 8, 9, and 12(b)(6) and *Twombly*, to allege specific actionable conduct by the adjuster and to distinguish claims against the adjuster from generic, conclusory, statute-tracking claims against the insurer.'" *South Austin Pharmacy, LLC v. Pharmacists Mut. Ins. Co.*, No. A-15-CV-0271-LY-ML, 2015 WL 2445969 at *3 (W.D. Tex. July 7, 2015) (quoting *Okenkpu v. Allstate Tex. Lloyd's*, No. H-11-2376, 2012 WL 1038678, *7 (S.D. Tex. Mar. 27, 2012)) (collecting cases). Accordingly, Omega's claims against Stitts must meet this heightened pleading standard.

Doc. 14 at 18.

As indicated, the magistrate then concludes that Plaintiff's claims, including its negligent procurement claim, fail to satisfy even the less stringent Rule 8(a) pleading standard:

> Even under the more liberal pleading standard of Rule 8(a), Omega has failed to allege any substantive facts regarding [Mr.] Stitts'[] involvement in procuring and providing the [P]olicy, including any alleged violation of the TIC and DTPA. The [P]etition is vague, devoid of factual substance, and impermissibly conclusory, and also mimics statutory text in many instances—allegations that are insufficient to state a claim.

*Id.* at 19.

The court disagrees with the foregoing analysis by the magistrate judge to the extent it is directed at Plaintiff's negligent procurement claim against Mr. Stitts. First, the court disagrees that the "specific actionable conduct by the adjuster" legal standard applies to ***all*** of Plaintiff's claims against Mr. Stitts, as the unpublished district cases cited by the magistrate judge, and the Fifth Circuit case[*] from which this rule derives, make clear that this standard applies to claims against insurance company employees who have been accused of violating Article 21.21 of the TIC or the DTPA.

---

[*] *See Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 544-45 (5th Cir. 2004).

The court also disagrees that the factual allegations in Plaintiff's Original Petition with respect to its negligent procurement claim are conclusory or fail to satisfy Rule 8(a). In the section of its Original Petition in which it asserts various causes of action, Plaintiff alleges as follows with respect to its negligent procurement and other negligence claims:

> Defendant Holmes Murphy and [Mr.] Stitts' actions and omissions, as described herein, constitute negligence, negligent procurement and negligent misrepresentations/failures to disclose. Holmes Murphy and [Mr.] Stitts failed to procure the insurance coverages specifically requested by Omega for the Property and failed to disclose or advise if same could not be procured, were not procured or there was a critical ( alleged) exclusion for certain counties for certain perils for "works while in transit," adds the main county Omega transacts business, and changes the definition of "works while in transit" to (allegedly) encompass all construction works, not just works while in transit. These critical changes go to the core of Omega's business and should have been disclosed.
>
> Omega reasonably relied on the acknowledgements, representations, admissions and assurances of Holmes Murphy and [Mr.] Stitts that coverages were obtained (without a fundamental exclusion for certain added counties for certain perils for "works while in transit" encompassing all of Omega's construction works (if Federal is to be believed)), and that Omega was fully and properly insured for property insurance as specifically requested, needed and discussed on numerous occasions and in the counties it transacts business, for all perils and for its construction works. Omega also reasonably relied on the silence of Holmes Murphy and [Mr.] Stitts when they failed to advise that, apparently, an exclusion for certain counties for certain perils for "works while in transit" which allegedly encompasses all constructions works and not just works while in transit was included in the Policy that excludes certain loss(es) in certain counties at issue in Omega's claim for all construction works (if Federal is to be believed). In short, Holmes Murphy and [Mr.] Stitts failed to procure the specific insurance coverages requested for the Property.
>
> As a result of Holmes Murphy and [Mr.] Stitts' conduct, Omega suffered damages and seeks same from Holmes Murphy and Stitts.

Doc. 1-3 at 6-7.

Plaintiff further alleges in the Background section of its Original Petition that:

> [A]fter the covered loss(es) and denial by Federal, [Mr.] Stitts admitted to Omega that Omega was covered for the loss(es) under the Policy. [Mr.] Stitts also represented to Omega that Omega would be made whole, and if Federal did not do so, Holmes Murphy would cover Omega's damages.

[U]nbeknownst to Omega, changes were made to the previous Federal [P]olicy insuring Omega at the time of renewal before the subject Policy was bound and before the subject loss(es)—changes in which Federal now uses to deny Omega's claim, including adding certain counties excluded for certain perils and a changed definition of "works while in transit." As a result, *and in the alternative*, if Federal is to be believed in its interpretation of the alleged county exclusion for certain perils for "works while in transit," Holmes Murphy and [Mr.] Stitts, specifically as the main point of contact agent for Omega, knew about the county exclusion for certain perils (including Bell County which the Property is located and the primary county Omega transacts its construction business) for "works while in transit" as well as the changed definition of "works while in transit" and failed to advise Omega of these critical changes before procurement and binding of the Federal Policy.

Again, [Mr.] Stitts was the agent at Holmes Murphy that Omega dealt with for years on a regular basis regarding the procurement of property insurance policies, and specifically, the Policy at issue in this lawsuit. Yet, neither [Mr.] Stitts nor anyone at Holmes Murphy mentioned this critical and important exclusion and change in definition of "works while in transit". . . . [Mr.] Stitts should have advised Omega of this exclusion and changed definition but failed to do so.

Moreover, Holmes Murphy and [Mr.] Stitts, specifically as the Omega point of contact and agent for Omega, failed to provide the actual insurance Policy to Omega before it was bound and before the loss(es). If Holmes Murphy and [Mr.] Stitts in particular had either: (a) advised Omega of these critical changes, including the change in definition of "works while in transit" to include all of Omega's construction works even while not in transit . . . ; (b) or provided a copy of the Policy before binding or after but before the loss(es), and . . . Omega could have prevented this issue, including but not limited to, seeking to remove the exclusion, seeking to change the definition of "works while in transit" to not include all construction works by Omega . . . , paying a larger premium to get the coverage Omega requested and/or procuring a policy with another insurance company to acquire the coverages requested. Holmes Murphy and [Mr.] Stitts specifically (who was the point person Omega dealt with on this issue) failed.

. . . .

Holmes Murphy and [Mr.] Stitts specifically as Omega's main point of contact and agent have engaged in wrongful conduct/negligent procurement when renewing the Policy by failing to advise Omega of this exclusion in the Policy for counties Omega frequently works in, by failing to advise Omega of this change in definition of "works while in transit," and by failing to provide the Policy to Omega with this exclusion and changed definition before it was bound and before the loss(es). [Mr.] Stitts and Holmes Murphy acknowledged, represented and assured Omega that coverages were obtained (without a fundamental exclusion for certain perils in

> certain counties Omega frequently works in for "works while in transit"—encompassing all construction works—which goes to the heart and totality of Omega's business), and that Omega was fully and properly insured for property insurance as specifically requested, needed and discussed on numerous occasions and in the counties it transacts business and for all perils.
>
> Due to Federal's denial and/or Holmes Murphy and [Mr.] Stitts' negligence in procuring the Policy with an alleged exclusion for certain counties Omega frequently transacts business in for certain perils for "works while in transit" and a changed definition of "works while in transit," Omega paid out of pocket for repairs to the seventy-one (71) houses and fence damaged by the loss(es). The repairs have been completed, and Omega has provided substantial support to Defendants for all that has been spent to repair the damages.

Doc. 1-3 at 3-6 (emphasis added).

These factual allegations are far from conclusory or "bare" and are sufficient to establish at least the reasonable possibility that Plaintiff will be able to recover against Mr. Stitts on its negligent procurement claim under Texas law. *See* Doc. 14 at 8 (explaining that, under this second prong of the improper joinder test, the question is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against [a non-diverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [a non-diverse] defendant") (quoting *Smallwood*, 385 F.3d at 573).

From the foregoing allegations, including Plaintiff's allegations regarding the number of years that Mr. Stitts had acted as Omega's insurance agent, the court can reasonably infer that Mr. Stitts was intimately aware of and familiar with Omega's specific business needs. The following key allegations by Omega also support such an inference and reflect that Omega's negligent procurement claim is not based solely on its allegation that Mr. Stitts breached its duty to Omega by failing to disclose the inclusion of the "works while in transit" exclusion and changed definition in Omega's renewed Policy that were not included in prior policies: (1) "[Mr.] Stitts . . . acknowledged, represented and assured Omega that coverages were obtained (without a

fundamental exclusion for certain perils in certain counties Omega frequently works in for 'works while in transit'—encompassing all construction works"; (3) Mr. Stitts represented "that Omega was fully and properly insured for property insurance as specifically requested, needed and discussed on numerous occasions and in the counties it transacts business and for all perils"; (4) "after the covered loss(es) and denial by Federal, [Mr.] Stitts admitted to Omega that Omega was covered for the loss(es) under the Policy [and] . . . also represented to Omega that Omega would be made whole, and if Federal did not do so, Holmes Murphy would cover Omega's damages"; (5) if Mr. Stitts had notified Omega that the terms of its insurance coverage had changed, Omega could have and would have opted for a different policy from Holmes Murphy even if more expensive, attempted to negotiate more favorable terms, or could have procured a policy with another insurance company with the coverage it needed; (6) the loss of coverage and monetary damages Omega suffered with respect to the Property were proximately caused by Mr. Stitts representations, assurances, and failure to disclose pertinent information regarding the inclusion of the "works while in transit" exclusion and changed definition in Omega's renewed Policy. Plaintiff's allegation that the exclusion and changed definition "goes to the heart and totality of Omega's business" and affects the "primary county [where] Omega transacts its construction business" also supports a finding that the changes to Omega's insurance coverage in its renewed Policy were material.

Accepting these well-pleaded facts as true, the court determines that there is a reasonable basis to predict that Plaintiff could recover against Mr. Stitts on its claim for negligent procurement of an insurance policy on the grounds that he breached his duty to Omega to use reasonable diligence in attempting to place the insurance coverage requested by Omega that did not exclude coverage in the counties where Omega conducts its business and to inform Omega promptly prior

to issuance of the renewed Policy if such coverage could not be provided in light of the exclusion and materially changed definition for "works while in transit" that was not included in Omega's prior policies, and that Omega suffered damages in the form of allegedly uncovered losses under the renewed Policy as a result. *See May*, 844 S.W.2d at 669.

**C. Effect of FIC's Duty-To-Read Defense**

Finally, the parties disagree whether the magistrate judge erred in adopting FIC's argument that Omega's alleged failure to read the policy precludes it from recovering against Mr. Stitts. In this regard, the magistrate judge determined:

> Regarding Omega's allegation that Stitts failed to disclose the "works while in transit" exclusion to the Federal [P]olicy (*see* Pet. at 7-8), under Texas law, an insured has a duty to read the policy and is charged with knowledge of the policy's terms and conditions, and an insurance agent has no duty to explain the policy terms. *WMS, LLC v. Allied Prop. & Cas. Ins. Co.*, 244 F. Supp. 3d 567, 573 (W.D. Tex. 2017) (collecting cases). Accordingly, "alleged[ly] fraudulent representations cannot as a matter of law override the written contract terms[.]" *Luna v. Feliciano*, No. 6:18-CV-00340-ADA-JCM, 2019 WL 10349406, at *4, (W.D. Tex. Jan. 29, 2019).

Doc. 14 at 20-21. Although the magistrate judge appears to have limited its failure-to-read discussion to Plaintiff's fraud claims under the TIC and DTPA, the court considers whether it applies to Plaintiff's negligent procurement claim since it is unclear whether the magistrate judge viewed all of Plaintiff's claims as being based on fraudulent representations.

Plaintiff asserts that this statement by the magistrate judge is not only inconsistent with Plaintiff's pleadings in which it alleges that it did not receive a copy of the Policy beforehand, but it is also inconsistent with other language in the Report in which the magistrate judge acknowledges that Plaintiff did not have an opportunity to read the Policy because it did not receive a copy of the Policy. Plaintiff further asserts that any issue with respect to whether it read the Policy is, at most, one of comparative fault, not complete claim preclusion. FIC appears to step

back from the original argument it made in response to Plaintiff's Motion to Remand and now contends that Omega's objection and contention that it did not possess a copy of the Policy before it sustained the loss to the Property is immaterial to the analysis of Mr. Stitts' duty under the circumstances.

Plaintiff has the better argument here. In ruling on the parties' improper joinder arguments, the court must accept as true the factual allegations in Plaintiff's Original Petition in which it specifically alleges that it was not provided with a copy of the Policy before it was bound or before it incurred the losses that were the subject of the claim submitted under the Policy. Moreover, in Texas, the issue of whether an insured is legally presumed to have read and understood the terms of an insurance policy traditionally goes to the issue of the insured's contributory negligence and an insurance agent's "duty-to-read defense" in response to a suit for negligence for which Defendants in this case would have the burden of establishing. *Insurance Network of Tex. v. Kloesel*, 266 S.W.3d 456, 476 n.64 (Tex. App.—Corpus Christi, 2008, pet. denied) (citing *Frank B. Hall & Co. v. Beach, Inc.*, 733 S.W.2d 251, 264 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.)). Thus, it is not an element of Plaintiff's negligent procurement claim; nor would the assertion of such a defense automatically or necessarily preclude Plaintiff from recovering on its negligent procurement claim because "the mere failure on the part of an insured to read a policy does not per se bar a recovery, but is a circumstance to be considered on the question of the plaintiff's contributory negligence." *Insurance Network of Tex.*, 266 S.W.3d at 476 n.64 (quoting *Schustrin v. Globe Indem. Co.*, 130 A.2d 897, 899 (1957); and citing *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 119 (Tex. 1976)).

In *Colonial*, the Texas Supreme Court explained as follows regarding the duty-to-read defense raised by FIC:

> **It has been held by some courts that an insured has a legal duty to read his insurance policy, and that if he accepts the policy without objection, he cannot later seek its reformation on the ground that the prior agreement of the parties provided for a different coverage.** *See* Annot., 81 A.L.R.2d 7, 85 (1962), and cases there cited. **The prevailing view, however, was stated by this court in *Fireman's Fund Indemnity Co. v. Boyle General Tire Co.*, 392 S.W.2d 352, 355 (Tex.1965), as follows:**
>
> > **(A)n insured who accepts a policy without dissent, is presumed to know its contents, but the presumption may be overcome by proof that 'he did not know its contents when it was accepted, as by showing that when he received it he put it away without examination, or that he relied upon the knowledge of the insurer and supposed he had correctly drawn it.'** *Delaware Ins. Co. v. Hill*, 127 S.W. 283, 286—287 (Tex. Civ. App. 1910, writ ref.); . . .
>
> **We believe that the rule stated in *Boyle* is applicable here.** Although Colonial was not an insurance agent or insurer issuing a policy to Taylor for consideration, Colonial did voluntarily undertake to provide insurance coverage for Taylor's property (as found by the jury), and in this undertaking Colonial's duty was similar to that of an insurance agent. Taylor's testimony that he put the policy memorandum away without reading it destroyed the presumption that he was aware of its provisions, and because he did not read the policy he could not 'ratify' its contents. **It thus became Colonial's burden to prove that Taylor was negligent in failing to read the policy.** *See Schustrin v. Globe Indemnity Co.*, 44 N.J. Super. 462, 130 A.2d 897 (1957). Because the jury found that Taylor was not negligent—a finding for which there is support in the evidence—his failure to read the policy does not bar his recovery.

*Colonial*, 544 S.W.2d at 119 (emphasis added).

If anything, the reasoning in *Colonial* undermines any duty-to-read defense by FIC in light of Plaintiff's allegations that it was not provided with a copy of the Policy before it was bound or before it incurred the losses that were the subject of the claim submitted under the Policy. Further, Omega would have had no reason to read the Policy based on its allegation that Mr. Stitts' assured it that:

> coverages were obtained (without a fundamental exclusion for certain perils in certain counties Omega frequently works in for "works while in transit"—encompassing all construction works—which goes to the heart and totality of Omega's business), and that Omega was fully and properly insured for property

> insurance as specifically requested, needed and discussed on numerous occasions and in the counties it transacts business and for all perils.

Doc. 1-3 at 5. Like *Colonial Savings, Boyle, and Kloesel*, all of which "involved the insured not examining the policy on the basis that the policies were intended to protect the insured from the covered risk based on prior communications with an insurance agent," Omega alleges that its long-time insurance agent Mr. Stitts agreed to provide an insurance policy that did not exclude coverage for losses in counties where Omega conducted business but failed to do so, which is sufficient at the pleading stage to overcome *Boyle*'s presumption that "an insured who accepts a policy without dissent, is presumed to know its contents, but the presumption may be overcome by proof that he did not know its contents when it was accepted, as by showing that when he received it he put it away without examination, or that he relied upon the knowledge of the insurer and supposed he had correctly drawn it." *See Materials Evaluation and Tech. Corp. v. Mid-Continent Cas. Co.*, 519 F. App'x 228, 232 n.3 (5th Cir. 2013) (discussing *Colonial Savings, Boyle, and Kloesel* in which the insureds were able to overcome *Boyle*'s presumption because the policies did not comply with a prior agreement between the insurance agent and the insured"). Accordingly, FIC's duty-to-read defense is not a valid basis for concluding that there is no reasonable possibility of recovery by Plaintiff against non-diverse Mr. Stitts on its negligent procurement claim. *See Smallwood*, 385 F.3d at 573.

## III. Conclusion

For all of the foregoing reasons, the court, after conducting a de novo review of the portions of the Report to which objection was made, **concludes** that FIC, as the removing party has not met its heavy burden of establishing that Defendant Stitts' joinder was improper. Because non-diverse Defendant Stitts was properly joined, subject matter jurisdiction based solely on diversity is lacking; remand of this action for lack of jurisdiction is required; and the magistrate judge erred in

concluding otherwise. The court, therefore, **rejects** the findings and conclusions of the magistrate judge (Doc. 14); **sustains** Plaintiff's objections (Doc. 15) to the Report; **grants** Plaintiff's Motion to Remand (Doc. 5); **remands** this action to County Court at Law No. 5, Dallas County, Texas, from which it was removed; and **directs** the clerk of court to effect the remand in accordance with the usual procedure.

**It is so ordered** this 11th day of September, 2026.

Sam A. Lindsay
United States District Judge